RELIANCE NAT'L INDEM.
CO., et al., Plaintiffs,

v.

PINNACLE CAS. ASSUR. CORP.,
et al., Defendants.

John W. Goff, et al., Plaintiffs,

v.

Saul Steinberg, et al., Defendants.

Nos. CIV. A. 01–D–827–N,
CIV. A. 00–D–1577–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 19, 2001.

**1328**

Sterling G. Culpepper, Jr., W. Joseph McCorkle, Jr., Marc J. Ayres, Balch & Bingham, Montgomery, AL, Robert Lewin, Michele Jacobson, Claude G. Szyfer, Strook & Strook & Lavan, New York City, for The Reliance Group.

Thomas T. Gallion III, Jamie A. Johnston, Haskell, Slaughter, Young & Gallion, Montgomery, AL, John V. Fabiani, Brody, Fabiani & Cohen, New York City, for The Goff Group.

### *MEMORANDUM OPINION*
### *AND ORDER*

DE MENT, District Judge.

This order addresses three motions: (1)

Defendant Reliance Insurance Company's [1] Motion For Transfer Of Venue; (2) Defendant Saul Steinberg's [2] Motion To Dismiss For Lack Of Personal Jurisdiction; and (3) Defendant Reliance's Motion To Stay Pending Rehabilitation Proceedings. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion to transfer is due to be denied, and the motions to dismiss and to stay are due to be granted.

## I. INTRODUCTION

Plaintiff John W. Goff is the president, sole owner, and sole director of Goff NBA, Inc., which operates insurance companies throughout the Southeast. Defendant Saul P. Steinberg is a New York citizen, who is chairman of the board of Reliance Group Holdings, Inc., and a director of Reliance Insurance Company. Reliance Group Holdings is a holding company for various Pennsylvania insurance companies that all merged into Reliance Insurance Company.

This lawsuit arises from the business relationship between the Goff and Steinberg companies. Defendants removed this case, and they also brought claims of their own, in a suit filed in the Southern District of New York that has been transferred here. Meanwhile, the Reliance companies have been placed in rehabilitation proceedings in Pennsylvania. The jurisdictional squabbles among the parties, which are or were litigating in three separate fora, are the subject of this opinion.

## II. DISCUSSION

### A. *Reliance's Motion to Transfer*

Defendant moves to transfer this case to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). The statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.*

Plaintiffs' Complaint raises tort claims based partly on injuries incurred from their administration of several insurance contracts in Alabama and North Carolina. Reliance's only significant argument in support of its motion is based on a contract between Reliance National Company and Goff–NBA, Inc. This contract has a forum selection clause, which speaks to litigation in New York state or federal court. The pertinent part of the contract states as follows:

13. *Binding Effect: Choice of Law.* This Agreement shall be binding upon and inure to the benefit of each party hereto and their respective successors and permitted assigns. This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within New York. The parties agree to submit to the jurisdiction of the appropriate Federal or State courts located in the State of New York for the purpose of any suit, action or other proceeding brought in connection with this Agreement and, the parties hereby consent that service of process in any such suit, action or proceeding may be served in the manner as any notice may be given hereunder as set forth in [another provision]. Any and all disputes arising out of or in connection with this Agreement shall be resolved in the appropriate Federal or State court located in the State of New York.

---

1. "Reliance."

2. "Steinberg."

■ The court finds that the forum selection clause does not mandate litigation in New York. Forum selection clauses are either mandatory or permissive. If the clause is permissive, then a party may bring suit either in the specified forum or someplace else. If the clause is mandatory, then all parties must litigate in that forum unless one of them can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ The contract between Plaintiffs and Defendant states that it will be governed by the laws of the State of New York. Because New York's laws do not contravene the federal policy permitting forum selection, nothing in the *Erie* doctrine prevents the court from looking to New York law when interpreting the contract's forum selection clause. *See Alexander Proudfoot Co. World Hdg'rs v. Thayer,* 877 F.2d 912, 918–19 (11th Cir.1989); *Contraves v. McDonnell Douglas Corp.,* 889 F.Supp. 470, 471 n. 1 (M.D.Fla.1995). *But see Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 513 (9th Cir.1988) ("because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses.")

■ New York courts read forum selection clauses somewhat narrowly. In an opinion that has been widely cited with approval, former Judge Weinfeld found that a forum selection clause was permissive, even though it stated as follows:

> This contract is to be construed pursuant to the Laws of the State of New York and the undersigned bidder agrees that only the New York courts shall have jurisdiction over this contract and any controversies arising out of this contract. The undersigned bidder also agrees to submit any controversies or problems arising out of this contract to the New York courts and the New York courts only.

*See City of New York v. Pullman, Inc.,* 477 F.Supp. 438, 440 (S.D.N.Y.1979), *aff'd,* 662 F.2d 910 (2d Cir.1981).

■ According to Judge Weinfeld, "[a]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion, or it leaves it in the control of one party with power to force on its own terms the appropriate forum." *Id.* at 442 n. 11. *Cf. AGR Fin'l, L.L.C. v. Ready Staffing, Inc.,* 99 F.Supp.2d 399, 403 (S.D.N.Y.2000); *New York Marine & Gen. Ins. Co. v. M/V Admiralengracht,* 1999 WL 253628 at *1 (S.D.N.Y.1999).

In this case, the forum selection clause does not designate the New York state and federal courts to the exclusion of other courts. Rather, the language is similar to that in *John Boutari & Son v. Attiki Importers,* 22 F.3d 51 (2d Cir.1994), where the Second Circuit held that a forum selection clause was merely permissive. The contract stated that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts." The Second Circuit noted that the parties' use of the word "shall" merely singled out Greece as one forum among many permitted to hear the case, rather than the sole forum chosen from the bunch. *See id.* at 52–53.

Reliance does not refer the court to any case by the New York Court of Appeals that has enforced a forum selection clause worded similarly to the one at bar. In any event, Reliance asks the court to transfer this case to the Southern District of New York, where, according to the *Boutari*

court, Judge Weinfeld's rule "has been applied repeatedly." *Id.* at 53. Accordingly, the court finds that the forum selection clause relied on by Reliance does not foreclose litigation in Alabama. If merely provides that, if a case is brought in New York, then it shall be brought in the appropriate venue.

■ However, because Reliance's motion is not based exclusively on the agreement between the parties, the court shall look beyond the language of the contract and also consider any other relevant interests affected by transferring venue. *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). Factors bearing on transfer include the relative ease to sources of proof, the convenience of witnesses and parties, and the plaintiffs' interest in their original choice of forum.

In this case, all such factors are either inconclusive or weigh against transfer. Many witnesses are in Alabama, which is Plaintiffs' choice of forum. Evidence is portable, and Alabama is not an inconvenient forum for Defendant, which has done business here on a continuous, systematic basis. Accordingly, the court finds that Reliance has not met its burden of showing that this case should be transferred.

### B. *Steinberg's Motion to Dismiss*

The court now turns to Defendant Steinberg's motion to dismiss for lack of personal jurisdiction. This motion is due to be granted.

This case concerns Reliance's assumption of the assets and liabilities of certain self-insured worker's compensation funds in Alabama and North Carolina. In the late 1990s, Steinberg's companies agreed to reinsure the Alabama and North Carolina funds and to use Goff's companies as third-party administrators. Goff entered

these contracts because he knew of Reliance's decent reputation, and he had been told that the Reliance companies were in sound financial health, despite some underwriting reports to the contrary.

Goff has submitted into evidence two mass e-mails that he received from "Reliance Group Holdings." The e-mails are dated October 21, 1999 and January 10, 2000. They are addressed to "All Reliance Employees" or to an "All Employees List," and they are signed by Steinberg in his capacity as chairman and CEO. The e-mails contain multiple statements that downplay Reliance's financial problems and state that the company is doing well.[3] Goff says that he relied on these letters when deciding whether to do business with Steinberg's companies.

In the summer of 2000, Reliance's ratings were sharply downgraded, the company was hit hard on Wall Street, and its stock price tumbled from $20/share to 9¢/share. Rumors are that Steinberg raided corporate assets. Plaintiffs' lawsuit followed soon thereafter.

Steinberg states that he has not traveled to Alabama to conduct personal or corporate business since November 8, 1995. He has no personal agents doing business in Alabama. He does not own or lease property in Alabama, nor does he keep an office, telephone, or post office box here. He has not had any direct business or personal contacts with Goff or his companies.[4] He disavows any connection to the e-mails, stating as follows:

Plaintiffs have submitted to the Court e-mail correspondence allegedly sent by me to Plaintiffs in Alabama. I did not send those e-mails to Plaintiffs. Those e-mails are addressed to employees of Reliance, and were sent by me to Reli-

---

3. Doc. No. 15 Ex. N.

4. Doc. No. 2 Attach. (Steinberg Aff.)

ance employees. Plaintiffs are not Reliance employees. The e-mails do not refer to Plaintiffs. I did not either directly or indirectly request that the e-mails be sent to Plaintiffs. I have no personal knowledge with respect to how Plaintiffs were sent or received the e-mails.[5]

Furthermore, Steinberg notes that one of the e-mails bears a facsimile notation reading "RELIANCE NATIONAL" and a phone number. Steinberg states that faxes sent from Reliance Group Holdings, where he had his office at the time the e-mails and faxes were sent, do not bear this notation. "Moreover," he states, "at the time the e-mails were sent, Reliance Insurance Company and Reliance Group Holdings were located in different offices in New York City." Steinberg concludes by suggesting that "it appears that the e-mails were faxed to Alabama from a machine located in a building different from where I had my office." [6]

■ The court, in its discretion, will review this motion without an evidentiary hearing. Therefore, the plaintiff must raise a prima facie case of jurisdiction. The court takes uncontested allegations in the complaint as true. If the evidence conflicts, the court makes reasonable inferences in favor of the plaintiff, particularly when the jurisdictional questions are seemingly intertwined with the merits of the case. *See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir.1988) (citing *Psychological Res. Support Sys. v. Gerleman*, 624 F.Supp. 483, 486–87 (N.D.Ga.1985)). Speculation in an affidavit is inadmissible, *see LDM Sys., Inc. v. Russo*, 1997 WL 431005 at *1 (E.D.Pa.1997), but the court is free to draw its own conclusions from the facts presented.

A court's power over one's person derives from positive law and constitutional law. The court applies the Alabama long-arm statute, which authorizes personal jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See Marbury v. American Truetzschler*, 111 F.Supp.2d 1281, 1283 (M.D.Ala.2000).

■ The issue here is one of specific, not general jurisdiction. To this end, courts focus on the defendant's specific contacts with the jurisdiction and also basic principles of fairness. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The court has specific jurisdiction over a party when three elements are met. As the Eleventh Circuit has explained it:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve 'some act whereby the defendant purposely avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws.' Third, the defendant's contacts with the forum must be 'such that [the defendant] could reasonably anticipate being haled into court there.'

*Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir.1993) (internal citations omitted). Courts have no power over one whose contacts with the jurisdiction are random, fortuitous, or attenuated. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Alabama courts have exercised jurisdiction over corporate directors if they were

---

**5.** Doc. No. 18 Attach. (Steinberg Decl. ¶ 2.)

**6.** *Id.* ¶ 3.

personally and materially involved in a fraudulent scheme directed at an Alabama citizen. These situations typically involved contacts made for the economic gain of the director's corporation. *See Bowling v. Founders Title Co.*, 773 F.2d 1175, 1179 (11th Cir.1985) (mailing of purchase receipts); *Cordell v. Greene Finance Co.*, 892 F.Supp. 1396, 1399 (M.D.Ala.1995) (solicitation letters); *Duke v. Young*, 496 So.2d 37, 40 (Ala.1986) (phone calls and letters).

▮▮ In this case, the two e-mails received by Goff are Steinberg's only possible contacts with Alabama. E-mails, like letters and phone calls, can constitute minimum contacts, at least if the defendant or his agents send the message for pecuniary gain rather than substantially personal purposes. *See Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773, 779 (S.D.Miss. 2001). However, because contacts resulting from the unilateral activity of others are insufficient, it is not enough for Goff merely to produce e-mails forwarded to him by third-parties. E-mails are bound to be copied and sent to all corners of the world; it does not follow that the author opens himself up to jurisdiction similarly. Such a rule would chill the very types of legitimate communication that the Internet has made possible.

Steinberg's undisputed testimony is that he sent the e-mails only to Reliance's employees, that Plaintiffs are not among this group, and that he does not know how the e-mails got to Alabama. The court realizes that Steinberg has not produced documents showing precisely who was on the e-mail list. However, there is no evidence that the list included Goff, and Steinberg's emphatic statement that "I did not send those e-mails to plaintiffs" negates any contrary inference urged by the plaintiffs, who bear the burden of proof.

Inferences must be based on facts in the record. The court cannot find that Steinberg intentionally directed his communications to these Plaintiffs in this forum. In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court held that an Oklahoma court could not exercise jurisdiction over a New York car distributor that operated mainly in the Tri–State area, even though one of its customers was injured while traveling through Oklahoma en route to a new home in Arizona. While it was foreseeable that some customer might someday drive her auto through Oklahoma, this did not negate the fact that the distributor did not intentionally conduct business in Oklahoma or otherwise avail itself of Oklahoma law. *See id.* at 295–96, 100 S.Ct. 559. Similarly, in this case, the foreseeability that some third party might (and probably did) forward Steinberg's e-mails to Alabama, without Steinberg's knowledge or consent, cannot support a finding of purposeful availment of Alabama law.

In sum, Steinberg's contacts with Alabama are random and fortuitous. Accordingly, the court finds that the Due Process Clause bars jurisdiction over his person in this court. Steinberg's motion to dismiss is due to be granted.

### C. *Reliance's Motion to Stay*

▮ The court now turns to Reliance's motion to stay Plaintiffs' claims, pending a rehabilitation proceeding in Pennsylvania state court. On May 29, 2001, a Pennsylvania court considered a petition by the Insurance Commissioner of Pennsylvania and ordered that "[a]ll actions currently pending against Reliance in the Courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed," [7] while the

---

7. Doc. No. 36 Ex. Q at 8 ¶ 22. The Pennsylvania order applies to all of the Reliance

companies. *See id.* at 1–2 (preamble).

Commissioner develops a rehabilitation plan that is subject to judicial review. *See* 40 P.S. § 221.17(a). Reliance's motion to enforce the stay is well-taken.

The states are primarily responsible for regulating the insurance industry. Pennsylvania has enacted a comprehensive system to deal with insurance rehabilitation and liquidation. The state court's order enjoins all persons from obtaining preferential judgments involving Reliance or Reliance's assets. Federal courts have abstained in similar situations involving Pennsylvania rehabilitation proceedings. *See, e.g., Twin City Bank v. Mut. Fire Marine & Inland Ins. Co.*, 646 F.Supp. 1139, 1142 (S.D.N.Y.1986). Allowing Plaintiffs to proceed in this matter would necessarily mean deciding the existence and amount of Reliance's liability to Plaintiffs, thereby granting Plaintiffs preferential treatment over other creditors.

Alabama's adoption of the Uniform Insurers Liquidation Act also weighs heavily in favor of deference to stay orders from states like Pennsylvania, which have satisfactory policies for protecting plaintiffs who have contracted with financially troubled insurers. *See Ex Parte United Eq'l Life Ins. Co.*, 595 So.2d 1373, 1374 (Ala. 1992). Therefore, Plaintiffs' claims against Reliance are due to be stayed. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Anshutz v. J. Ray McDermott Co.*, 642 F.2d 94 (5th Cir. 1981) (per curiam).[8]

Reliance's counterclaims against Plaintiffs are also due to be stayed. Reliance has not shown that its lawsuit is a costless proceeding, and the state court has enjoined "all persons" from "disbursing, disposing of, or assigning any assets, contracts, causes of action, funds, records or other property of any nature of Reliance" and from "interfering in any manner with the conduct of the rehabilitation of Reliance."[9] It is for the state court and the Rehabilitator to determine whether the suit is in the interests of the general public and Reliance's policyholders and creditors. *See Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 132 Pa.Cmwlth. 196, 572 A.2d 798, 803 (1990). There is no evidence that the Rehabilitator has petitioned the state court to allow Reliance to proceed with its lawsuit. *See* 40 P.S. § 221.17. This matter shall be placed on the court's administrative docket, pending an appropriate motion to reinstate based on future developments.

### III. ORDER

It is CONSIDERED and ORDERED as follows: (1) the court's orders of June 26, 2001 be and the same are hereby WITHDRAWN; (2) Reliance's Motion For Transfer Of Venue be and the same is hereby DENIED; (3) Steinberg's Motion To Dismiss be and the same is hereby GRANTED, with the statute of limitations on Plaintiffs' claims subject to equitable tolling since June 26, 2001 or earlier; and (4) Reliance's Motion To Stay be and the same is hereby GRANTED.

The Clerk of Court shall REMOVE this from the court's active docket and PLACE it on the administrative docket, with leave for either party to reinstate the same upon appropriate motion.

---

8. The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

9. Doc. No. 36 Ex. Q at 9–10 ¶ 26.