Gregory V. Serio, superintendent of insurance of the State of New York, as rehabilitator of Frontier Insurance Company, petitions this Court for a writ of mandamus directing the trial court (1) to issue an injunction staying all claims against Frontier in Schillinger Place, L.L.C., et al. v. Cay-Chel, Inc.,et al., a case currently pending in the Mobile Circuit Court, and (2) to permit Serio, as the rehabilitator of Frontier, to pursue Frontier's counterclaims in the same case. The plaintiffs, Schillinger Place, L.L.C., Crestview, L.L.C., and the Trotman Company, Inc., in response, argue that this Court should uphold the trial court's decision to place this matter back on its active docket. We grant the petition in part, deny it in part, and issue the writ.
 I.
In March 1997, the plaintiffs in the underlying action entered into a contract with Cay-Chel, Inc., for the construction in Mobile, Alabama, of a commercial-development project known as Schillinger Place. In April 1997, the parties entered into another contract for the construction of a commercial-development project known as Crestview Market Place, in Crestview, Florida. For each project Cay-Chel executed with Frontier, a corporation domiciled in New York, both a performance bond and a payment bond. Under the terms of the bonds, Frontier would become responsible for the performance of the construction contracts and for Cay-Chel's debts if Cay-Chel defaulted on its contracts with the plaintiffs.
By December 1997, Cay-Chel was in default on both the Schillinger Place and the Crestview Market Place contracts. The plaintiffs demanded performance by and payment from Frontier; however, the plaintiffs allege, Frontier refused to perform in accordance with the terms of the bonds. In November 1998, the plaintiffs sued Cay-Chel and Frontier in the Mobile Circuit Court. Frontier asserted counterclaims against the plaintiffs, and the parties thereafter engaged in discovery.
During discovery, Frontier became insolvent. On August 27, 2001, a New York state court appointed Gregory V. Serio, the superintendent of insurance of the State of New York, as Frontier's temporary rehabilitator. On September 28, the Mobile Circuit Court placed Schillinger Place on its administrative docket pending a final order from the New York court regarding Frontier's status. On October 15, the New York court issued its permanent "Order of Rehabilitation." That order provided, in relevant part:
 "Gregory V. Serio, Superintendent, and his successors in office as Superintendent, is appointed Rehabilitator of Frontier and is authorized and directed to immediately take possession of its property, conduct its business, including but not limited to settling claims within his sole discretion, take such steps toward the removal of the causes and conditions which made this proceeding necessary as he shall deem wise and expedient, and deal with the property and business of Frontier in its name or in the name of the Superintendent as Rehabilitator;
 "Notice to all persons having claims against Frontier to file or present their *Page 1150 
claims to the Superintendent as Rehabilitator is deferred until further order of this court;
". . . .
 "All persons are enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator;
 "All persons are enjoined and restrained from obtaining preferences, judgments, attachments, or other liens or making any levy against Frontier's assets or any part thereof."
Schillinger Place remained on the administrative docket of the Mobile Circuit Court until April 2003, when Frontier moved the court to reinstate Frontier's counterclaims to the court's active docket. In the same motion, Frontier requested that the court continue to stay the plaintiffs' claims against it in the same case. In May, the trial court granted in part and denied in part Frontier's motion and reinstated the entire case to its active trial docket. Frontier then petitioned this Court for the writ of mandamus.
 II.
The applicable standard of review for a petition for a writ of mandamus is well settled. In Ex parte Miles, 841 So.2d 242,243-44 (Ala. 2002), we stated:
 "`A writ of mandamus is an extraordinary remedy, and it will be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts Serv. Co., 590 So.2d 252 (Ala. 1991).'"
(Quoting Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893,894 (Ala. 1998).) Moreover, "[t]he burden is on the petitioner who seeks a writ of mandamus to show that each element required for issuance of the writ has been satisfied." Ex partePatterson, 853 So.2d 260, 263 (Ala.Civ.App. 2002) (citing Exparte Consolidated Publ'g Co., 601 So.2d 423 (Ala. 1992)).
 III.
Frontier argues that it has a clear legal right to have the plaintiffs' claims against it stayed based on Alabama's version of the Uniform Insurers Liquidation Act ("UILA") appearing at §§27-32-1(2) through (13); 27-32-4; 27-32-5; and 27-32-15 through -22, Ala. Code 1975. The National Conference of Commissioners on Uniform State Laws drafted the UILA to "resolve some of the complexities of liquidating an insolvent insurance company with assets in multiple states." Levin v. National Colonial Ins.Co., 1 N.Y.3d 350, 356, 806 N.E.2d 473, 476, 774 N.Y.S.2d 465,468 (2004). Alabama adopted the UILA in 1971 in order "to effectuate its general purpose to make uniform the law of those states that enact it." § 27-32-22(b). New York has also adopted the UILA and is therefore considered a "reciprocal state," as that term is defined at § 27-32-1(8). Because New York is a reciprocal state and the UILA expressly empowers a court to issue "injunctions or orders as may be deemed necessary to prevent . . . the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments or other liens" against an insurer or its assets, Frontier argues that the Mobile Circuit Court is bound to adhere to the New York court's October 15 order and to stay *Page 1151 
the plaintiffs' claims against it. § 27-32-5(b).
Frontier's argument is supported by this Court's previous decisions interpreting the Alabama UILA. In Ex parte UnitedEquitable Life Insurance Co., 595 So.2d 1373, 1374 (Ala. 1992), two policyholders sued United after it failed to pay a claim they had submitted. Because United was undergoing a rehabilitation proceeding in Illinois, it promptly moved the trial court, under the Alabama UILA, to stay the action. The trial court denied United's motion, reasoning that allowing the policyholder merely to obtain a judgment against United would not violate the Alabama UILA, although the policyholder would be prevented from collecting on that judgment. In reversing the trial court's decision this Court stated:
 "If this case were litigated and the [plaintiffs] obtained a judgment against United for the amount due under their policy, the judgment would give them priority for payment over others holding insurance contracts with United. The [Alabama UILA] is meant to protect the interests of all policyholders until the company either becomes financially solvent again or some other form of action is taken. Therefore, until the Illinois court makes further determinations, the assets of United must remain neutral."
595 So.2d at 1375. In Ex parte Noble Trucking Co.,675 So.2d 356 (Ala. 1996), we again recognized the right of an insurance company undergoing rehabilitation to obtain, pursuant to the Alabama UILA, a stay in ongoing litigation, although, for reasons not dispositive in the present case, we ultimately decided that the plaintiff did not have a right to a stay in that case.[1] See also Reliance Nat'l Indem. Co. v. PinnacleCas. Assur. Corp., 160 F.Supp.2d 1327, 1334 (M.D.Ala. 2001) ("Alabama's adoption of the [UILA] also weighs heavily in favor of deference to stay orders from states like Pennsylvania, which have satisfactory policies for protecting plaintiffs who have contracted with financially troubled insurers.").
Frontier cites cases from the United States Court of Appeals for the Eighth Circuit and from federal and state courts in Alabama, California, Florida, Hawaii, Kentucky, Pennsylvania, South Carolina, and Texas, in which courts have stayed actions against Frontier based on the New York court's October 15 rehabilitation order. According to Frontier, those cases all support the proposition that, under the UILA, courts are bound to recognize stay orders issued by courts presiding over rehabilitation proceedings in foreign jurisdictions. See, e.g.,Frontier Ins. Co. v. American Title Servs., 838 So.2d 1178, 1179
(Fla.Dist.Ct.App. 2003) ("It is the public policy of Florida to cooperate with reciprocal states in delinquency proceedings involving an insurer.").
Frontier has established that it has a clear legal right under the Alabama UILA to a stay of all claims against it in Alabama. Therefore, the trial court's decision to return SchillingerPlace to its active trial docket was in error. However, we must also consider whether Frontier is entitled to require that its counterclaims against the plaintiffs be placed on the active trial docket, notwithstanding the fact that the plaintiffs' claims against Frontier *Page 1152 
have been stayed. We conclude that Frontier has not shown a clear legal right to that relief.
Frontier argues that its right to pursue its claims against the plaintiffs is grounded in the Alabama UILA. Section 27-32-16(c), Ala. Code 1975, provides that "[t]he domiciliary receiver of an insurer domiciled in a reciprocal state may maintain an action in this state to recover any assets of such insurer to which he may be entitled under the laws of this state." The plaintiffs do not dispute that, under the terms of the Alabama UILA, Frontier may elect to pursue its claims against the plaintiffs; however, the plaintiffs argue that they are entitled to simultaneously pursue their claims in the same action should Frontier choose to do so.
This Court's previous decisions interpreting the Alabama UILA have dealt solely with whether Alabama courts should respect stay orders issued by foreign courts. However, other courts have considered whether an insurer can pursue claims against a party while preventing that party from asserting counterclaims. InMaleski v. Landberg (No. 93 Civ. 5318) (S.D.N.Y., Jan. 12, 1995) (not published in F.Supp.), World Life Health Insurance Co. of Pennsylvania, Inc., an insurer undergoing liquidation proceedings in Pennsylvania, sued William Landberg and others, alleging fraud and unjust enrichment. Landberg asserted a counterclaim. Based on the UILA, the trial court granted World Life's motion to dismiss the counterclaim, stating that "if this court allowed the counterclaim to go forward the court would, in effect, accord the defendants a preference over similarly situated creditors standing in line in the liquidation proceeding." The plaintiffs argue that the present case is distinguishable from Maleski because they, not Frontier, initiated this litigation, and because the litigation was initiated before Frontier became insolvent. However, notwithstanding these facts, the underlying principle is the same — allowing the plaintiffs to assert their claims would "accord [them] a preference over similarly situated creditors standing in line in the liquidation proceeding." Id.
The plaintiffs also argue that not allowing them to assert their claims would "result in the waste of judicial economy as well as undermin[e] and seriously prejudic[e] a party's rights and remedies in this litigation." It may be true that the same facts are at issue in both the plaintiffs' claims and Frontier's counterclaims. However, precluding the plaintiffs from asserting their claims against Frontier now does not necessarily mean that those same facts will again be at issue in a later proceeding when the plaintiffs do have the opportunity to assert their claims. As stated by the Maleski court:
 "While it is true that it is not possible to separate the adjudication of the plaintiff's claim . . . from the [defendants'] claim . . ., that fact does not give the defendants the right to seek affirmative relief in this court. [Moreover], the fact that defendants cannot obtain affirmative relief in this court does not mean that they will be required to relitigate the matter in the Pennsylvania liquidation proceeding. As the court explained in [Schenck v. Coordinated Coverage Corp., 50 A.D.2d 50, 54, 376 N.Y.S.2d 131 (N.Y.App.Div. 1975)], `if defendant['s] . . . construction of the [transaction at issue] is upheld, the liquidator's action will be dismissed and that determination will be binding upon the parties and defendant can thereupon proceed to present its evidence in support of the amount due to it in the claim allowance proceeding.'" *Page 1153 
Moreover, the plaintiffs' argument that they should be allowed to pursue their claims at the same time as Frontier because they have already invested several years in this litigation is unpersuasive. When confronted with a similar argument in G.C.Murphy Co. v. Reserve Insurance Co., 54 N.Y.2d 69, 80-81,429 N.E.2d 111, 117, 444 N.Y.S.2d 592, 598 (1981), a New York court stated:
 "We are also cognizant of the individual hardship suffered by the present plaintiff, who has been in the throes of litigation for the past seven years and now must pursue its claim in the distant forum of Illinois. By enacting the Uniform Insurers Liquidation Act, our Legislature has determined that such occasional instances of adversity are outweighed by the paramount interest of the various States in seeing that insurance companies domiciled within their respective boundaries are liquidated in a uniform, orderly and equitable manner without interference from external tribunals."
(Footnote omitted.)
Although Frontier is entitled to maintain its counterclaims, it has no clear legal right, superior to the trial court's interests in avoiding piecemeal and possibly inconsistent dispositions of intertwined claims, to have those counterclaims moved off of the administrative docket pro tanto. As noted, the October 15, 2001, "Order of Rehabilitation" states that "[n]otice to all persons having claims against Frontier to file or present their claims to the Superintendent as Rehabilitator is deferred until further order of this court." No other information is provided by the materials and briefs submitted by the parties concerning whether there is in place a process pursuant to which the rehabilitator will receive or entertain claims such as those asserted by the plaintiffs in the Mobile Circuit Court. Perhaps their claims against Frontier will ultimately be allowed to proceed in the Mobile Circuit Court upon a lifting of the injunction contained in the rehabilitation order. At any rate, now that we direct the trial court to stay the proceedings against Frontier, that court should be given the option of deciding whether likewise to stay the proceedings by Frontier. Although Frontier has shown that it has a right to maintain its claims even after entering into rehabilitation, it has not shown a clear legal right to a particular timing of the disposition of its claims.
 IV.
Therefore, we grant the petition for the writ of mandamus to the extent that we grant Frontier's request for stay of the plaintiffs' claims against Frontier and we direct the trial court to vacate its order placing those claims on its active trial docket. Insofar as Frontier asks us to order the trial court to allow it to go forward with its counterclaims against the plaintiffs, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] In Noble Trucking, individuals injured in an automobile accident brought a personal-injury action against the other driver involved in the accident, who was insured by an insurer that was in rehabilitation in Indiana. We agreed with the plaintiffs that the fact the insurance company was a nonparty to the action was a distinction "significant enough to render [United Equitable Life Insurance Co.] inapposite." NobleTrucking, 675 So.2d at 359. In the present case, Frontier is a defendant.